# R. M. NEELEY, et al., Respondents, v. WALKER D. HINES, Director General, Appellant.

Kansas City Court of Appeals, February 7, 1921.

1. **CARRIERS: Negligent Delay: Liable for Damages to Cattle Placed in Sun, Though Not Negligent in Selecting Place.** Where a railroad is guilty of negligent delay in shipment of cattle, the damage caused cattle, while waiting to be moved, by being placed in the heat of the sun in railroad yard, and at a place therein where they were deprived of proper air and ventilation, is recoverable even though there was no negligence in placing the cattle at the particular point in its yards.

2. **————: Not Liable for Damages to Cattle Caused by Heat of Sun, Unless Guilty of Negligent Delay.** If there was no negligence in the delay, then the carrier would not be liable for damages caused by the heat of sun, unless there was negligence in placing the cattle in such unfavorable location.

3. **PLEADING: Allegation That Carrier "Negligently" Placed Cattle in Sun Held Conclusion.** An allegation that the carrier "negligently" placed cattle in sun is a conclusion, and not sufficient to charge negligence in placing the cattle.

4. **COURTS: Interstate Shipment Governed by Rules of Decision of Federal Courts.** An interstate shipment is governed by the rules of decision in the Federal Courts.

5. **CARRIERS: Interstate Shipment: Burden on Plaintiff to Show Negligent Delay.** In an action for damages on account of negligent delay in interstate shipment, the burden is on the plaintiff to show negligence; the burden of proof being a matter of substance.

6. **————: Evidence: Insufficient to Establish Prima-Facie Proof.** Evidence *held* insufficient to establish prima-facie showing of negligent delay in shipment of cattle, or a situation from which an inference of negligence could reasonably be drawn.

Appeal from the Circuit Court of Boone County.—*Hon. David H. Harris*, Judge.

REVERSED AND REMANDED.

*H. D. Murry* and *N. T. Gentry* for respondents.

*McBaine, Clark & Rollins* for appellant.

TRIMBLE, P. J.—This is an action to recover damages on account of negligence in the transportation of six cars of cattle from Columbia, Missouri, to the National Stock Yards at East St. Louis, Illinois, over the Wabash Railroad.

Upon the trial, after the introduction of the evidence in plaintiff's behalf, the defendant demurred thereto and introduced no evidence. Verdict and judgment went for plaintiff and the defendant has appealed.

Defendant having stood on his demurrer to the evidence, the facts hereinafter stated are gleaned wholly from the testimony offered in plaintiff's behalf.

The six carloads of fat steers were loaded and shipped out of Columbia on the 28th of July, 1919, somewhere between noon and 2:15 p. m. The line from Columbia is a branch, joining the main line at Centralia where a shipment must either change cars or the cars must be taken out of the branch train and put into a train going through Centralia to St. Louis on the main line.

It seems that formerly—how long before does not appear—cattle were loaded and shipped out of Columbia at 4 o'clock in the afternoon and proceeded to Centralia where they were picked up by the through main line train for St. Louis at about 5:30 or six o'clock p. m. of the same day. But, at some time before the shipment in question, a train had been put on the main line which was scheduled to pass through Centralia on its way to St. Louis about three o'clock in the afternoon. The shipment in question was taken out of Columbia on a branch special freight train to connect with this through train passing Centralia at 3 p. m. The shipment arrived at Centralia over the branch line about one o'clock, but did not leave there for St. Louis until about 6:15 that eve-

ning. It went out on the *first* train hauling live stock that went through Centralia after the shipment arrived there. It is not exactly clear from the record whether the stock went from Centralia on the three o'clock train *delayed until* 6:15, or whether it went on the train regularly due at Centralia about six. We gather, however, that it went on the latter. But it is unquestioned that the stock did go on the first train passing through Centralia after the stock arrived there.

The record is *wholly silent* as to what was the cause of the three o'clock train being thus delayed until 6:15, or, if the shipment was taken by the six o'clock train, what caused the three o'clock train to fail to go through at all.

The usual time for a shipment, leaving Columbia at noon of one day, to arrive at East St. Louis, was around seven, eight or nine o'clock the next morning, but the cattle of this shipment did not get to the stock yards until 11:35 in the morning, and did not get into the sale pens until one o'clock in the afternoon. Owing to the additional time they were on the cars, and under the conditions they were in while at Centralia, they were gaunt and had an extra shrinkage of 20 pounds to the head; besides, there was evidence that sales at the market are largely over at noon, when the buyers leave and won't come back that day especially to buy cattle that have a "stale" appearance; hence the cattle could not be sold that day nor until they had been fed, watered and rested, but had to be held over until succeeding days of the market, on which there were declines in the market price, and plaintiff suffered additional loss, on account of further shrinkage and a still lower price because of the stale and "held over" appearance of the cattle, and the expense of extra feed bills.

As in the case of Berry v. Chicago, etc., R. Co., 208 S. W. 622, there is some question as to the construction that should be placed on the petition. It alleges negligent delay in the transportation of the cattle and also states that the defendant negligently placed the cattle,

during such delay, in the hot sun of a very warm July afternoon at a point on the side track at Centralia where they were surrounded by a high solid wall or fence and other cars and were thereby deprived of proper air and ventilation, suffering more damage and a greater shrinkage than the delay itself would otherwise cause; and that by reason of the delay and the negligent placing of the cattle in such hot place, the plaintiff was damaged in the total sum demanded.

Now, if there was negligence in the delay of the cattle at Centralia, then of course the suffering of the cattle in the heat there, causing additional shrinkage on that account, would be merely an element of increased damages caused by the delay, and the defendant would be liable for such increased damages, even though there was no negligence in the mere placing of the cattle at the particular point in the yards at Centralia. But if there was no negligence in the mere delay, then the defendant would not be liable for the damages caused by the heat unless there was negligence in placing the cattle in such unfavorable location.

As to the placing of the cattle in such untoward spot, the petition does not state facts which makes negligence appear in the mere placing of them there; all that it states is that the defendant "negligently" placed them there which is nothing more than a conclusion. Hence we are of the opinion that the petition based the cause of action solely on negligent delay. But no matter what construction should be placed upon the petition in this regard, undoubtedly the case was submitted solely on negligence in delay, and, therefore, the question of whether defendant's demurrer should have been sustained must depend upon whether there was any evidence tending to show such negligence.

The shipment was an interstate one and is, therefore, governed by the rules of decision in the Federal Courts. One of these is that, in an action for damages on account of negligent delay, the burden is on plaintiff to show negligence, the burden of proof being a matter

of substance. [New Orleans, etc., R. Co. v. Harris, 38 U. S. Sup. Ct. Rep. 535, 536; McMickle v. Wabash R. Co., 209 S. W. 611, 13; Baker v. Schaff, 211 S. W. 103; Burgher v. Wabash R. Co., 217 S. W. 584.] As stated before, there is no evidence showing that the delay at Centralia was negligent. So far as the record reveals, it may have been from causes wholly beyond defendant's control, and certainly there was not a prima facie showing of negligence or a situation from which an inference of negligence could reasonably be drawn. There may be some showing of negligence in putting the cattle in the heat at a place, in the station yards at Centralia, where they could not get proper ventilation and where the heat would be greater and its effects more severe than if they had been placed at some other more favorable point in the station yard limits where it was possible for the cattle to have been put. And plaintiff appears to rely upon the evidence of this negligence to support the burden of proof. But, as said before, the case is not bottomed nor submitted on such negligence, but on negligence in delay, of which there is no evidence. Hence the judgment cannot stand.

Some complaint is made of error in introducing the live stock paper to show market conditions without the necessary preliminary proof. We need not pass upon this point now, since, no doubt, upon another trial this complaint will be obviated. Besides, the record seems to show that when the paper was first introduced, defendant objected and was *sustained,* and then when later it was again offered no objection was made, or at any rate no exception was saved.

The judgment is reversed and the cause is remanded for a new trial. All concur.